UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALVATORE CARFAGNA *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN CREDIT MANAGEMENT CORPORATION,<br><br>Defendant. | Civil Action No.: 21-2710 (JXN)(JRA)<br><br><br>**OPINION** |

**NEALS**, District Judge

The Court *sua sponte* raised the issue of whether Plaintiff Salvatore Carfagna ("Plaintiff") has Article III standing to pursue his claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692, *et seq*. (ECF No. 24.) The Court has carefully considered the parties' supplemental briefs on the issue (ECF Nos. 25-27) and decides this matter without oral argument under Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court finds Plaintiff lacks Article III standing to bring his FDCPA claims, and the Complaint is **DISMISSED** *without prejudice* for lack of subject matter jurisdiction.

    **I.    BACKGROUND**[1]

This case arises out of Defendant Franklin Credit Management Corporation's ("Defendant") attempts to collect a debt. In February 2009, Plaintiff entered a loan modification agreement with GMAC Mortgage, LLC ("GMAC") and incurred a financial obligation ("Debt"). (Compl. ¶ 17, ECF No. 1; Pl.'s Ex. A ("Collection Letter"), ECF No. 1, at *18-21.[2]) GMAC

---

[1] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).
[2] Pincites preceded by an asterisk (*) indicate pagination according to CM/ECF headers.

transferred the Debt to the Bosco Credit II Trust Series 2010-1 ("Trust"). (Compl. ¶ 21.) Wilmington Savings Fund Society, FSB ("Wilmington") is the Trustee of the Trust. (*Id*.) Plaintiff defaulted on the Debt, and Wilmington assigned it to Defendant for collection. (*Id*. ¶¶ 22, 23.) Defendant sent Plaintiff a collection letter on February 13, 2020 ("Collection Letter") seeking to recover $41,437.91 on the Debt. (*Id.* ¶ 24; Collection Letter *18.) The Collection Letter provides, in relevant part, as follows:

> Enclosed please find a copy of a Loan Modification Agreement you signed with [GMAC] on or about February 20, 2009 with respect to the Note you originally signed on May 1, 2006 with Home Loan Corporation of Texas DBA Expanded Mortgage Credit . . . . [Wilmington], not in its individual capacity but solely as Certificate Trustee of [the Trust] is the current holder of the aforementioned Loan Modification Agreement. [Defendant] is the present servicer for Wilmington.

(Collection Letter *18.) Plaintiff argues that under 15 U.S.C. §1692g(a)(2), the Collection Letter was required to identify the name of the creditor; however, based upon the identification provided, "the least sophisticated consumer would be unable to discern who is the creditor to whom the debt is due." (Comp. ¶ 31.)

The Collection Letter also provides that "[t]he loan is due for May 2009 and subsequent payments, plus late charges, fees and costs. As of today, the total amount past due is $41,437.91." (*Id.* ¶ 32; Collection Letter *18.) Plaintiff contends the meaning of "[t]he loan is due for May 2009" is unclear, (Compl. ¶ 33), and "the Collection Letter is confusing, deceptive and false as to "subsequent payments, plus late charges, fees and costs," (*id.* ¶ 34). Plaintiff asserts the Collection Letter fails to "properly itemize" the amounts it claims are due, (*id.* ¶ 36), or identify if late charges, fees and/or costs are continuing to accrue on the Debt, (*id*. ¶ 37). Additionally, Plaintiff argues that the Collection Letter lists several states followed by a set of rights, but fails to indicate whether the rights listed under each state name are limited to residents of that state and whether they apply to Plaintiff. (*Id.* ¶¶ 39-45; Collection Letter *19-20.) As a result, Plaintiff claims that

2

> [t]he least sophisticated consumer may believe that he or she may not be entitled to the benefit of the provisions listed under each state name, because he or she does reside in that state, when in fact some of the state specific protections afford the same rights under the FDCPA. Alternatively, the least sophisticated consumer may think that he or she is entitled to [] all of the additional state specific rights since nothing in the letter indicates that these rights are limited only to residents of these states.

(*Id.* ¶¶ 41, 42.)

Plaintiff further alleges that on February 25, 2020, Defendant taped a notice ("Notice") in an unsealed envelope to the front door of Plaintiff's apartment complex. (Compl. ¶ 67; Ex. B ("Notice"), ECF No. 1, at *23-24.) The Notice states, "**PLEASE CONTACT** Franklin Credit" and provides a telephone number and hours of operation. (Notice *23.) (emphasis in original). The bottom of the Notice, in small lettering, states, "This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose." (*Id.*) Additionally, on March 1, 2020, Plaintiff alleges Defendant left "a confidential packet of documents" ("Packet") on a table in the lobby of Plaintiff's apartment complex. (Compl. ¶ 68; *see also* Ex. C. ("Packet"), ECF No. 1, at *26-32.) The Packet included "Assignment Documents," "Field Visit Assignment Instruction," another request to contact Defendant, and a Google Maps printout of Plaintiff's address. (*See* Packet.)

The bottom of the second-to-last page of the packet states in big, bold print, "**This document is not to be left at the assignment address under any circumstance**." (Packet *32) (emphasis in original). Plaintiff claims the Packet was not in an envelope or addressed to Plaintiff. (Compl. ¶ 68.) Plaintiff alleges "upon information and belief" that other people saw the Packet. (*Id.* ¶ 70.) Plaintiff argues Defendant violated 15 U.S.C. §1692b, by communicating to a third person that Defendant is collecting a debt, and 15 U.S.C. §1692c(b), by communicating with third-parties without obtaining prior consent. (*Id.* ¶¶ 70-71.)

Plaintiff alleges he "suffered injury-in-fact by being subjected to the unfair and abusive practices of Defendant," (*id.* ¶ 49), and "suffered actual harm by being the target of Defendant's misleading debt collection [c]ommunications," (*id.* ¶ 50). Specifically, Plaintiff alleges that Defendant's failure to provide correct/accurate information "impeded his ability to make a well-reasoned decision," "impacted h[is] ability to decide on how to proceed with respect to the matter, and "frustrated [his] ability to intelligently choose a response." (*Id.* ¶¶ 58-60.)

On February 16, 2021, Plaintiff filed this putative class action against Defendant for violations of the FDCPA. (*See generally id.*) The Complaint asserts that Defendant violated several provisions of the FDCPA, including 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(10), 1692f, 1692f(1), 1692g, and 1692g(a)(2), by sending allegedly misleading debt collection letters in its collection attempts against Plaintiff and others similarly situated (Count I, "class claims"), and by improperly conveying Plaintiff's private information to third parties in violation of 15 U.S.C. §§ 1692b, 1692c(b), 1692e, 1692e(10), and 1692f (Count II, "individual claim"). (*See* Compl ¶¶ 63-70.)

On July 1, 2021, Defendant moved to dismiss the Complaint. (Def.'s Mot. Dismiss, ECF No. 7.) Plaintiff opposed, (Pl.'s Opp'n Br., ECF No. 14), and Defendant replied, (Def.'s Reply, ECF No. 18). Prior to assessing the pleadings, on June 30, 2023, this Court *sua sponte* raised the issue of standing and denied Defendant's motion without prejudice pending supplemental briefings on whether Plaintiff has standing to bring each of his claims. (Order, ECF No. 24.) Thereafter, the parties submitted supplemental briefing. (*See* Def.'s Supp. Br., ECF No. 25; Pl.'s Supp. Br., ECF No. 26; Def.'s Supp. Reply Br., ECF No. 27.)

**II.   LEGAL STANDARD**

Before addressing the merits of a dispute, a court must determine whether it has subject matter jurisdiction over the action. *See Hollingsworth v. Perry*, 570 U.S. 693, 704-05 (2013). Standing is a threshold jurisdictional issue that "can be raised at any time," either by the court or the parties. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) (*quoting Ctr. For Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009)). *See also Crisafulli v. Ameritas Life Ins. Co.*, No. 13-5937, 2015 WL 1969176, at *1 n.2 (D.N.J. Apr. 30, 2015) (noting standing may be raised by the Court *sua sponte* "because standing is a constitutional prerequisite for federal court jurisdiction."). Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[A] case or controversy can exist only if a plaintiff has standing to sue." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 286 (3d Cir. 2023) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)).

To establish Article III standing, a plaintiff must allege they suffered "(1) a concrete, particularized, and actual or imminent injury, (2) that was likely caused by the defendant, and (3) would likely be redressable by a favorable judicial decision." *Morales v. Commonwealth Fin. Sys., Inc.*, No. 22-3388, 2023 WL 8111458, at *2 (3d Cir. 2023) (citing *TransUnion*, 594 U.S. at 423). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion*, 594 U.S. at 423 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). A plaintiff's injury must be concrete, meaning "real, and not abstract." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).

The violation of a statute, by and of itself, is not a concrete injury. *Id.* at 426-27; *see also Spokeo*, 578 U.S. at 340-42 (explaining that although Congress may identify legally

5

cognizable harms sufficient to confer standing, some federal statutory violations still may be insufficiently concrete). Violations of statutory rights may give rise to standing when they engender either "traditional tangible harms, such as physical harms and monetary harms" or "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425. To establish an intangible, concrete injury, courts look to whether the alleged injury resembles "a close historical or common-law analogue." *Id*. at 424.

### III.  DISCUSSION

At any time during the pendency of a lawsuit, courts have an independent obligation to determine whether subject matter jurisdiction exists. *Blunt*, 767 F.3d at 280. Plaintiff filed supplemental briefing in support of standing for his claim that Defendant violated sections 1692e, 1692f, and 1692g of the FDCPA by (1) failing to properly identify the creditor to whom the alleged Debt is purportedly owed; (2) failing to accurately state the amount of the Debt; (3) by making false, deceptive, or misleading representations in connection with the collection of the Debt; and (4) creating confusion by including state specific disclosures. (Pl.'s Supp. Br. 7.) While not addressed in his supplemental brief, in the Complaint, Plaintiff also alleges that Defendant violated sections 1692b, 1692c, 1692e, and 1692f of the FDCPA by leaving certain documents related to the Debt in the common area of Plaintiff's residence. (Compl. ¶¶ 70-71.) With respect to injury and harm, Plaintiff alleges that he suffered "injury" by being "subjected to unfair and abusive practices of Defendant" and "actual harm" by being "the target of Defendant's misleading debt collection communications." (*Id.* ¶¶ 49-50.) Defendant agrees that "Plaintiff's complaint has, at this stage of litigation, alleged injury sufficient for Article III purposes." (Def.'s Supp. Br. 2.) The Court disagrees.

6

### A. Violations Based on the Collection Letter

Plaintiff alleges the Collection Letter violated the FDCPA by failing to accurately convey, from the perspective of the least sophisticated consumer, the current balance on the debt; the name of the creditor to whom the debt was due; what subsequent payments, plus late charges, fees and costs meant with respect to the Debt, and whether these amounts were continuing to accrue; attempting to collect more than Defendant was entitled to collect; listing state specific rights without identifying which applied to New Jersey. (*See* Pl.'s Supp. Br. 7; Compl. ¶¶ 28-49.)

"[T]he Supreme Court has repeatedly recognized that an 'informational injury,' where a plaintiff alleges that she 'failed to receive . . . information' to which she is legally entitled, is sufficiently concrete to confer standing." *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022) (quoting *TransUnion*, 594 U.S. at 441). To establish an informational injury, the plaintiff must show "(1) the denial of information and (2) some consequence caused by that omission." *Id.* at 213. Confusion alone is not a concrete injury. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 140-41 (3d Cir. 2023). "[U]nclear disclosures do not equate to outright omissions." *Id.* at 146. "The plaintiff must show a concrete and particularized loss, not infuriation or disgust." *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020).

Thus, in the context of FDCPA violations, district courts in the Third Circuit post-*TransUnion* have found that "a debt collection letter containing false and misleading information causes an injury . . . related to common-law fraud." *Fitterer v. Resurgent Cap. Servs. L.P.*, No. 21-19068, 2024 WL 1810027, at *4 (D.N.J. Apr. 25, 2024) (citing *Lahu v. I.C. Sys., Inc.*, No. 20-6732, 2022 WL 6743177, at *8 (D.N.J. Oct. 11, 2022)). *See also Madlinger v. Enhanced Recovery Co., LLC*, No. 21-154, 2022 WL 2442430, at *5 (D.N.J. July 5, 2022); *Vaughan v. Fein, Such, Kahn & Shepard, P.C.,* No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. Jun. 24, 2022).

7

In other words, to recover for misleading information in a debt collection letter, "a plaintiff must allege some form of detrimental reliance on the representations made by a defendant in a collection letter." *Fitterer*, 2024 WL 1810027, at *4–5 (dismissing complaint where "Plaintiff does not allege how Defendants' failure to state in the Collection Letter whether interest had accrued or that no further interest would accrue on the debt changed Plaintiff's conduct in a detrimental way"). Here, Plaintiff fails to allege that he relied on the letter's representations to his detriment. Indeed, there is no allegation that Plaintiff sustained any financial or emotional harm because of the Collection Letter. Plaintiff merely alleges that the letter caused confusion and that he suffered "an adverse effect." Nor does the Complaint set forth any "downstream consequences" flowing from Plaintiff's receipt of the allegedly false, deceptive, or misleading collection letter. *TransUnion*, 594 U.S. at 442. Therefore, the injury alleged from the Collections Letter is insufficient for the purpose of Article III standing.

### B. Violations Based on the Notice and Packet

"The FDCPA prohibits debt collectors from communicating with third parties 'in connection with the collection of any debt.'" *Strouse v. Enhanced Recovery Co.*, 956 F. Supp. 2d 627, 634 (E.D. Pa. 2013) (quoting 15 U.S.C. § 1692c(b)). Section 1692c(b) states that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer." *Davis v. Phelan Hallinan & Diamond PC*, 687 F. App'x 140, 144 (3d Cir. 2017). This provision "'implicates a core concern animating the FDCPA—the invasion of privacy'—and thus is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts.'" *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 357-58 (3d Cir. 2018) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

Here, too, Plaintiff fails to allege that the Notice or Packet caused him a concrete injury. To start, the Notice was in an envelope addressed to Plaintiff. (*See* Notice *24.) But third parties could not see inside that envelope. As for the Packet, the cover page does not indicate it is a debt collection communication, and, as best the Court can tell, it reveals no private information, such as Plaintiff's account number. (*See* Packet *26.) A passerby would have seen a page titled "Assignment Documents" and subtitled "Field Visit- Sand Castle Form." (*Id.*) While the page also said, in small letters, "Loan Type: UNSECURED LOAN," it is not immediately clear what that means. A third party would not readily assume Plaintiff had *defaulted* on an unsecured loan. In sum, while the FDCPA prevents debt collectors from invading a debtor's privacy, Plaintiff does not adequately allege how either of Defendant's communications caused him a concrete injury akin to invasion of privacy. Thus, Plaintiff lacks Article III standing, and this Court lacks subject matter jurisdiction; therefore, this action is dismissed without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, this Court finds that Plaintiff lacks Article III standing to pursue his claims in federal Court. Accordingly, this action is **DISMISSED** *without prejudice* based on this Court's lack of subject matter jurisdiction. An appropriate Order follows.

**DATE**: December 4, 2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge